UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:15-cr-00159-JAW-01 |
| ) | |
| SYRIANE BALDWIN ) | |

**ORDER ON MOTION TO EXCLUDE PORTIONS OF THE
PRESENTENCE INVESTIGATION REPORT**

The Court declines to rule on the accuracy of the contents of a presentence investigation report that will not factor into the Defendant's sentence.

**I.    BACKGROUND**

On September 16, 2015, a federal grand jury charged Syriane Baldwin with two counts of distribution of cocaine base on September 3 and September 5, 2014, both violations of 21 U.S.C. § 841(a)(1). *Indictment* (ECF No. 19). On May 18, 2016, Mr. Baldwin pleaded guilty only to count two of the indictment, the September 5, 2014 incident, and the Government agreed to dismiss count one, the September 3, 2014 incident. *Agreement to Plead Guilty* at 1 (ECF No. 90); *Min. Entry* (ECF No. 91).

The United States Probation Office (PO) prepared a Presentence Investigation Report (PSR) that was finally revised on August 10, 2016. *Presentence Investigation Report* at 1-18 (*PSR*). The PSR described the offense conduct of September 5, 2014. *Id.* ¶ 6. The PSR also included as relevant conduct Mr. Baldwin's sale of crack cocaine on September 3, 2014. *Id.* ¶ 5. The number of grams of cocaine base from the two

sales was only 3.15 grams or 54.92 kilograms of marijuana equivalent. *See id.* ¶¶ 5, 6. However, as further relevant conduct, the PO described in paragraph seven Mr. Baldwin's involvement in a much broader drug-dealing conspiracy, involving the distribution of cocaine base, heroin, and oxycodone, beginning the summer of 2012 and continuing until September 2014; the PO attributed an additional 4,610.05 kilograms of marijuana equivalent to this broader conspiracy. *Id.* ¶ 7. Mr. Baldwin objected to the contents of the broader conspiracy and, when pressed, the Government conceded that it "is not prepared to prove the relevant conduct drug quantities attributed to the defendant in paragraph 7." *Id.* addendum at 1.

Mr. Baldwin is scheduled to be sentenced on October 26, 2016. *Notice of Rescheduled Hr'g* (ECF No. 106). On October 6, 2016, Mr. Baldwin moved to exclude the information in paragraph seven from the PSR. *Def.'s Mot. to Exclude Info. From the Am. Presentence Investigation Report* (ECF No. 110) (*Def.'s Mot.*). The Government filed its opposition on October 7, 2016. *Gov't's Resp. to the Def.'s Mot. to Exclude Info. From the Am. Presentence Investigation Report* (ECF No. 111) (*Gov't's Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   Syriane Baldwin's Motion

In his motion, Mr. Baldwin asserts that during plea negotiations in his case, the Government "has made it clear to both current and prior counsel . . . that they intended to pursue drug conspiracy charges against him in addition to the current Indictment." *Def.'s Mot.* ¶ 2. He says that after he pleaded guilty, the Government

2

provided the PO with reports evidencing his "relevant conduct." *Id*. However, not all of these reports have been provided to Mr. Baldwin. *Id*. As a consequence, he complains, the PSR contains "a relevant conduct claim involving the alleged drug quantities from the undisclosed conspiracy investigation materials." *Id*.

As Mr. Baldwin sees it, the Government has responded that it does not intend to present any evidence at sentencing to support the relevant conduct in the PSR and it would specifically not share any investigative material about the other drug conspiracy with him. *Id*. ¶ 3. Even though Mr. Baldwin objected to the inclusion of these materials in his PSR, the PO refused to remove the objected-to material. *Id*. Mr. Baldwin agrees that the United States Sentencing Guidelines allow a court to calculate the guideline range based "not only on the crime of conviction, but on separate crimes, comprised of their own elements, of which the defendant was acquitted, with which the defendant was never charged, or which were dismissed." *Id*. ¶ 4 (citing U.S.S.G. § 1B1.3(a)(1), (a)(2), and cmt. n.3).

Mr. Baldwin claims that the information in the instant case fits into a new category not recognized by the Guidelines: crimes with which the defendant will be charged. *Id*. ¶ 5. For these crimes, Mr. Baldwin argues that the Government has the right to protect its ongoing criminal investigation from early disclosure, but he also says that a defendant has certain constitutional rights. *Id*. He maintains that the inclusion of this relevant conduct invites him "to surrender these fundamental rights." *Id*.

3

Even if the Court were not to consider the information in paragraph seven to determine his sentence, Mr. Baldwin still objects to its inclusion in the PSR. *Id.* ¶ 6. He complains that the inclusion of information that he has had no opportunity to see and challenge would be fundamentally unfair. *Id.* Next, he objects to the "inclusion of conspiracy materials and the [PO's] relevant conduct calculations and conclusions because the PSR will follow with the defendant and affect his rights and status after sentencing." *Id.*

### B. The Government's Response

In its response, the Government confirms that it "does not intend to prove the drug quantity attributed to the defendant in PSR paragraph 7" and it "will not be asking the Court to sentence the defendant based on the quantities reported in that paragraph." *Gov't's Opp'n* at 1. Accordingly, the Court, in the Government's view, "may conclude that it will not consider the contents of paragraph 7 in sentencing the defendant and its sentence will not be affected by the contents of paragraph 7." *Id.* In fact, the Government states that it suggested to the PO that the PSR "be revised to remove reference to the matters contained in paragraph 7," but the PO "elected to keep the matters in the report." *Id.* at 1 n.1. Referring to Federal Rule of Criminal Procedure 32 and 18 U.S.C. § 3552, the Government states that it is "aware of no authority" for the Court to "exclude information from the PSR after it has been revised following the objection period." *Id.* at 1-2.

### III. DISCUSSION

Federal Rule of Criminal Procedure 32 provides guidance on this issue:

> *Court Determinations.* At sentencing, the court:
>
> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and
>
> (C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

FED. R. CRIM. P. 32(i)(3)(A)-(C). Here, the Court accepts the positions of both the Government and Mr. Baldwin that the contents of paragraph seven should not be considered for purposes of determining his sentence. Therefore, as the Court will not consider paragraph seven for sentencing purposes, under Rule 32(i)(3)(B), the Court is not required to make any factual determinations on this disputed issue.[1]

The question turns to whether the Court should make a factual determination where the resolution of the issue will not affect Mr. Baldwin's sentence. The Advisory Committee addressed this issue in 2002:

> Finally, the Committee considered, but did not adopt, an amendment that would have required the court to rule on any "unresolved objection to a material matter" in the presentence report, whether or not the court will consider it in imposing an appropriate sentence. The amendment was considered because an unresolved objection that has no impact on determining a sentence under the Sentencing Guidelines may affect

---

[1] The Government's decision not to prove the contents of paragraph seven of the PSR has a significant impact on Mr. Baldwin's guideline range. Using this information, the PO held Mr. Baldwin responsible for 4,665.93 kilograms of marijuana equivalent for a base offense level of 32 under U.S.S.G. § 2D1.1(a)(5) and (c)(4). *PSR* ¶¶ 8, 13. With certain enhancements, with acceptance, and with a criminal history category of II, Mr. Baldwin faced a guideline sentence range of 168 to 210 months. *Id.* ¶ 49. Excluding this information and the enhancements, Mr. Baldwin's base offense level would be lowered to 14 and the Government may not be able to prove a managerial or aggravating role, resulting in a total offense level of 12 with acceptance of responsibility. With a criminal history category of II, the new guideline range would be 12 to 18 months.

> other important post-sentencing decisions. For example, the Bureau of Prisons consults the presentence report in deciding where a defendant will actually serve his or her sentence of confinement. *See A Judicial Guide to the Federal Bureau of Prisons*, 11 (United States Department of Justice, Federal Bureau of Prisons 1995) (noting that the "Bureau relies primarily on the Presentence Investigator Report . . ."). And as some courts have recognized, Rule 32 was intended to guard against adverse consequences of a statement in the presentence report that the court may have been found to be false (citations omitted).
>
> To avoid unduly burdening the court, the Committee elected not to require resolution of objections that go only to service of sentence. However, because of the presentence report's critical role in post-sentence administration, counsel may wish to point out to the court those matters that are typically considered by the Bureau of Prisons in designating the place of confinement. For example, the Bureau considers: the type of offense, the length of sentence, the defendant's age, the defendant's release residence, the need for medical or other special treatment, and any placement recommendations made by the court. *A Judicial Guide to the Federal Bureau of Prisons*, *supra*, at 11. Further, a question as to whether or not the defendant has a "drug problem" could have an impact on whether the defendant would be eligible for prison drug abuse treatment programs. 18 U.S.C. § 3621(e) (Substance abuse treatment).
>
> If counsel objects to material in the presentence report that could affect the defendant's service of sentence, the court may resolve the objection, but is not required to do so.

*Id.* advisory committee's note to 2002 amendment (*2002 note*).

Although Mr. Baldwin suggests that the contents of paragraph seven of the PSR may affect the service of his sentence, he provides no specificity. *Def.'s Mot.* ¶ 6 ("[T]he PSR will follow with the defendant and affect his rights and status after sentencing"). Mr. Baldwin has admitted that he violated federal criminal law by distributing a limited amount of crack cocaine within a limited period of time. He has provided no basis for his concern that the Bureau of Prisons will treat him differently if it learns that he distributed crack cocaine in larger volumes over a

6

longer period of time.  In other words, there is nothing in this record to confirm that the Bureau of Prisons will make significant penal judgments about Mr. Baldwin based on such incremental evidence of criminality.[2]

The Court is dubious that the contents of paragraph seven will make a meaningful difference in Mr. Baldwin's service of his sentence.  Mr. Baldwin went into federal custody on September 3, 2015.  *PSR* ¶ 2.  Without the additional drug quantities in paragraph seven and without the enhancements, Mr. Baldwin faces a guideline sentence range of twelve to eighteen months and he has already served thirteen months.  Even assuming the Court imposes a sentence at the high end of the guideline range, Mr. Baldwin has not provided any evidence that the Bureau of Prisons' assessment of the contents of paragraph seven of the PSR will affect the few months of remaining incarceration.  Obviously, if the Court imposes a time-served sentence, the issue will be entirely moot.  Before the Court exercises its discretion and resolves disputed factual issues, the Court must be satisfied that the controversy

---

[2]     The Bureau of Prisons publishes a Program Statement that details its inmate classification policies and procedures.  U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement, No. P5100.98, Inmate Security Designation and Custody Classification (Sept. 12, 2006).  A quick review of that publication reveals that the process is multi-factorial.  In his motion, Mr. Baldwin makes no mention of the Bureau of Prisons' process or how the specific information in paragraph seven, as opposed to the rest of the PSR, would affect his classification or designation.

The publication states that one of the factors, offense severity scale, is based on drug quantity and drug offense role, and that the Bureau of Prisons should look to the "Offense Conduct" section of the PSR for this information.  *See id.* ch. 4, at 7; *id.* app. A, at 5, 8.  The Court does not know, however, whether the Bureau of Prisons would include in its assessment the information set forth in paragraph seven, the offense conduct section of Mr. Baldwin's PSR, if the Court did not use that information to calculate his offense level.  Furthermore, even if the Bureau of Prisons would rate 4,665.93 KG of marijuana equivalent more severely than 54.92 kilograms of marijuana equivalent, this factor is one of many, including recommended facility, recommended program, voluntary surrender, months to release, criminal history score, history of violence, history of escapes or attempts, detainer status, education level, drug or alcohol abuse, public safety factors, and physical or mental health concerns.  *Id.* ch. 4, at 1-14.  In short, the Court does not know whether Mr. Baldwin's concern about the impact of the information in paragraph seven on his service of sentence is justified.

7

is real, not hypothetical. Here, Mr. Baldwin has not persuaded the Court that its ruling on the contents of paragraph seven would be responsive to a real case or controversy.

Moreover, if the dispute were submitted to the Court, it is unclear how the Court would resolve it. The advisory committee note suggests that the Court might wish to rule on a factual dispute if it may find that the information is false. *2002 note*. The advisory committee gives an example of whether a defendant has a drug problem affecting his eligibility for drug treatment. *Id*. But whether or not a defendant has a drug problem would presumably be susceptible to resolution.

Here, the Government has only represented that it will not present any evidence at Mr. Baldwin's sentencing hearing to prove the information in paragraph seven of the PSR, presumably because its investigation of the larger conspiracy is still pending and premature disclosure could have an adverse consequence on its investigation. In his objection, Mr. Baldwin has not stated that he did not commit the wrongs set forth in paragraph seven; he has only said that he does not know how the Government could prove his involvement. If the Court held a hearing and the Government did not present any evidence and Mr. Baldwin remained silent, the Court would be unable to make an accurate determination as to whether the information is either true or false; the Court could only find that there is no evidence.

If Mr. Baldwin is the object of the investigation and the Government later prosecutes him and demonstrates he was involved in the larger conspiracy as described in paragraph seven, the Court would have made a prior ruling, based on a

8

lack of evidence, the accuracy of which might later be disproved once the evidence was disclosed. At the same time, if the Government never prosecutes Mr. Baldwin or if it prosecutes him and he is found not guilty of the conduct in paragraph seven, at least he will know that this unprosecuted or unproven conduct did not increase his sentence for this crime.

Finally, Rule 32 itself provides that the PSR "must exclude . . . any sources of information obtained upon a promise of confidentiality." FED. R. CRIM. P. 32(d)(3)(B). If Mr. Baldwin is one of the objects of the pending investigation and the Government discloses the underlying information to prove the relevant conduct, Mr. Baldwin would gain advance information about the sources and status of the investigation, even before any indictment, which is the type of information Rule 32 expressly requires the PO to exclude from the PSR. The Advisory Committee acknowledged the potential unfairness of having confidential information included in the presentence reports that was not disclosed to a defendant, but it decided not to amend the rule to require complete disclosure. *Id.* advisory committee's note to 1989 amendment. Instead, the Committee concluded that it would be preferable for courts to determine whether the information should be disclosed or whether no finding will be made because such information will not be taken into account in sentencing. *Id.* Again, because the Court will not take the relevant conduct in paragraph seven into account for sentencing, it concludes that the relevant conduct can remain in the PSR even though the underlying information has not been disclosed.

9

In these circumstances, the Court will not rule on the accuracy of the contents of paragraph seven of the PSR. To ease Mr. Baldwin's concern about the Court's use of the information in paragraph seven for sentencing, the Court assures him that it will not use that information in determining the appropriate sentence to impose upon him.

## IV.   CONCLUSION

The Court DISMISSES without prejudice the Defendant's Motion to Exclude Certain PSR Entries (ECF No. 110).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 17th day of October, 2016